May it please the Court, my name is Curtis Pearce. I'm here appearing on behalf of the petitioner, Juan Luis Sequino Machique. As the record indicates, the petitioner is an indigenous person from Guatemala who is seeking asylum. His claim is twofold. It is based both on the problems he has had with the guerrilla insurgents and problems that result from being indigenous. These problems include being denied proper access to medical care, education, and employment. All right, who's going? It's off. Go ahead. Thank you, Your Honor. When you go through that, can you distinguish between discrimination and persecution when you're talking about medical and educational? I will try, Your Honor. The immigration judge denied his claim, finding, among other things, that since the petitioner speaks Spanish, he can now assimilate into Guatemalan society. On appeal, the petitioner has argued that in spite of the peace accords, he is still fearful of returning to Guatemala. And in light of his personal experiences and the documentary evidence submitted, indicating a slow implementation of the 1996 peace accords, this is a rational fear. Of what do you have to persuade us to prevail today? That he has a well-founded fear of returning to Guatemala, or that he's a member of a group against whom there's been a pattern and practice of persecution. If I can persuade you of that, then he is entitled to the discretionary relief of asylum. So was he the victim of past persecution? He also was the victim of past persecution. And that is substantiated by his testimony where he spoke of this incidence of being denied access to health care. And he has been somehow victimized as a member of some group or for some reason on account of? And what are you identifying there? The fact that he's a member of an indigenous tribe? Yes. He testified about his grandfather being denied medical care. And as a result of that, his father died. And the reason he was denied medical care was because his father was indigenous. Denied medical care. Is that persecution? Persecution has been defined by this court as the infliction of suffering. It sounds like discrimination to me. It's often difficult to determine. It's case by case whether it's discrimination or persecution. Well, let's assume that if it's difficult and there would be evidence that would support that it's discrimination as opposed to persecution, doesn't that put you in a tight spot relative to substantial evidence, if there's more than one interpretation of whether it could be discrimination or persecution? It does. Again, some of the cases cited by the government showed the distinction between groups against whom there's a pattern and practice of persecution and simply disfavored groups. In the disfavored groups, there's somewhat of a higher standard. Those were the cases, Kotaz and Mogian, M-G-O-I-A-N, where they indicate if an individual is unable to show a pattern and practice against a group, the applicant can still show he's a member of a disfavored group, in which case the court looks to the risk level of membership in the group and the alien's individual risk level. But again, getting back to this very difficult question of whether the inability to find proper medical care, education, and employment is discrimination or persecution, I believe the court's determined this on a case-by-case basis. And I don't think there's any cases that indicate a bright line. Well, if you just had that alone and you didn't have – obviously you have, I think, obviously another more serious incident. But if you had that alone, would that be enough? I would argue it is. I would. I would argue that that would – That's getting pretty weak, though, right? That's for your Honor to determine. I would argue that he's still – that would cost you membership in a class against – in a group against whom – Don't you have to convince us somehow that all reasonable fact-finders would so conclude? I mean, you seem to be saying, well, it's a difficult question, I would argue, but the standard of review that we have to use according to the Supreme Court is real tough. I understand that. But again, this regulation helps me. The regulation states if one is a member of a group against whom there's a pattern and practice of persecution, the individual does not then prove he would have to be singled out for persecution. And another – But you're assuming the answer to the question in your statement of the proposition there. I mean, if he is persecuted, that's one thing, but the question is, what was he? And we've got a record that says, no, it was simply discrimination, don't we? Well, I think we have strong evidence from the State Department indicating that there's extrajudicial killings of indigenous peoples in Guatemala as well as limited educational and employment opportunities. That's in the administrative record, page 107. That's from the State Department profile. All right. Identify for me exactly what you mean when you say he was the victim of persecution or discrimination, as it may be. Exactly what happened to him? Again, the instance he testified to was difficulty finding a doctor who would treat his grandfather, and that was because they were indigenous. What does that mean, difficulty? Being turned away. I believe that's what happened in the record. I mean, people over 65 now in the United States have difficulty finding doctors. I believe – Because of the Medicare problem. I believe – What do you mean, factually? He had – Factually, he went to a hospital. He went to doctors and did seven doctors tell him, because you're a member of this group, we won't treat you? He had went to one doctor, and the doctor said they wouldn't treat him. So one doctor, that's enough to compel a reasonable fact finder to conclude this somehow was persecution? No, Your Honor, not that alone. But the other fact was he talked about trying to go to school and being turned away. So what school did he go to, and what school was he turned away from? He was turned away from a school, I believe, where he would have been taught Spanish, and he was told to go to school in the village where he had to learn to stick to the K'iche' dialect. And that's persecution? Combined with all the other factors, I would argue it is. Okay, so one doctor, he was told he had to go to a different school. Okay. What's the next one? Employment. He testified about employment opportunities as well. What did he say that was personal to him? Yes, but the contention was that it's because he was indigenous that he was unable to get this particular job. So one job he didn't get? He says it's because he's a member of this indigenous group? That's true. And he also mentioned another incident here. I guess this is on page 59 of the administrative record where he was in a shop and he was suspected of stealing something. And, again, he believes he was so treated because of his background as an indigenous person. And what else that's peculiar to him, personal? Well, those are the main instances he testified. Yes, but those are the specific incidents he testified to, but the context was he's endured a whole life of this kind of treatment. Those were the four instances that he testified in court. Was there a situation where he was threatened if he didn't join a certain group? Did he testify to that? Yes, he testified to that as well. That was dealing with the guerrilla insurgents, and that's on the administrative record, page 62, where a group of guerrillas appeared at his house attempting to recruit him and threatening him to kill him if he refused. So we're looking at all those instances. He refused? He refused to join the guerrillas. What happened to him? Did they kill him? They didn't kill him, but eventually he fled to the United States as a result of this. How long? What was the time interval between the threats and leaving? It looked several months, it appears from the record. Did he move to hide from the guerrillas during that time? I believe he just eventually came to the United States. It's not clear from the record whether he hid in the interim. And why didn't he want to join the guerrillas according to his statements? Well, he was afraid, and he was 14 at the time. What does that have to do with political beliefs or anything like that, any of the enumerated categories? Well, it could be construed as imputed political opinion. If they concluded that his unwillingness to join a guerrilla movement was because he was against them, that could be construed as imputed political opinion. That's awfully speculative, though, isn't it? It is speculative, I'll concede that point. But he was 14 at the time, so it's difficult to know exactly what was the motivation of why he refused, other than the fact he was simply afraid of the guerrillas. And how old is he now? Pardon me? How old is he now? Now he was born in 1976, so that would make him 28. The other point I wanted to make dealing with the Spanish, because when the judge denied the case, he indicated that since the petitioner speaks Spanish, it's now safe for him to return to Guatemala without any fear of being persecuted. And I think that point sort of begs the question. I think the indigenous people of Guatemala are not persecuted because they do not speak Spanish, but rather the fact that they do not speak Spanish is evidence of their systematic persecution. So if he had to return to Guatemala, he'd still be subject to persecution for all the reasons the indigenous people are persecuted. I thought that was what kept him from getting a job. That's one way of looking at it. But it's a vicious cycle. They're not letting, if they're keeping indigenous people away from Spanish-speaking schools. Now he does speak Spanish. Now he does speak Spanish. But there are other traits that identify individuals as indigenous. The name, the town he comes from, all those factors will still come into play if he went back to Guatemala. The country report seems to refute the idea that if he goes back, he's going to be the victim of anything untoward. And they talk about in 1999 the government created an office of an ombudsman for indigenous people, a government office to which one can go to redress the kinds of grievances that you're telling us about. What impact does that have on this matter? Well, if you believe the petitioner's testimony, it doesn't have a great impact. We see in the record all kinds of efforts. We see peace accords. But the petitioner would say that- Well, when did he leave? He left in 1990. And this is 1999. And they talk about all the changes, including this ombudsman. Doesn't that support the IJ's decision? No, because the State Department report also supports the petitioner's contention that there's still persecution of indigenous people. And they're still locked out of mainstream society. And they have difficulty finding employment, education, and other opportunities. The IJ concludes that it's irrational to think that anybody would be interested in your client should he return to Guatemala at this late date, so long after all the things that he complained of. What's your response to that? That still doesn't mean he's not eligible for asylum, based on his membership of a group against whom there's been a pattern and practice of persecution. Do you have anything else, or would you care to retain some time to respond?  Thank you, counsel. Good morning, Your Honors. My name is Hong Park, and I'm counsel for the government. May it please the Court. The only question before this Court in this case today is whether the petitioner, Mr. Macek, has demonstrated under the substantial standard, substantial evidence test, that the evidence in the record doesn't just support, but in fact compels a reasonable fact finder to find a conclusion other than what the Board of Immigration Appeals reached. That being that Mr. Macek failed to meet his burden of demonstrating either past persecution or a well-founded fear of persecution if he were to return to Guatemala. This asylum request by Mr. Macek was denied only after he had a full hearing before an immigration judge, after he was able to have a consideration, full consideration before an asylum officer with the service. So what's the evidence that we should look at that would go against his position, so it would not compel? I think the record as a whole is replete with evidence that, in fact, goes contrary to what Mr. Macek would contend before this Court. As to his claims of past persecution, Mr. Macek, one, his claim that he was tempted to be recruited by guerrillas and this was an incident that would rise to the level of persecution, in fact, does not, because the record clearly indicates that Mr. Macek was only threatened verbally on one occasion by the guerrillas. He was only approached once. And this Court has previously found that, in fact, ordinarily threats alone without some other accompanying egregious act does not constitute persecution as intended by the act. Mr. Macek also testified later on that after, at some point when he was not home, these guerrillas visited him again and told his family that Mr. Macek needed to join the guerrilla group and threatened him again when he was not there. But the record also indicates that the family continues to live in the same house, that, in fact, all of his siblings reside in the same residence, and they've had no other problems since that incident where the guerrillas have come or taken any sort of offensive action against them. How many siblings are male? I believe two, three sisters and two brothers. At the time of the hearing, his two brothers remaining in Guatemala were 13 and 16, comparable to the age that the petitioner was at the time that he was in Guatemala and approached by the guerrillas. And there have been no incidents as far as the record shows that these other brothers who would be similarly situated to Mr. Macek have had any problems with the guerrillas. As to the past persecution claim regarding the fact that he was discriminated or he suffered harm because of his indigenous background, this court has previously found that discrimination alone does not rise to the level of persecution as intended by the Immigration and Nationality Act. And, in fact, as egregious as our society or as offensive as our society might find discrimination based on even race or religion might be, the fact that Mr. Macek was not able to obtain the ideal education or the ideal job that he sought is mere discrimination and does not rise to persecution, which is necessary for a grant of asylum. Was Homer Plessy of Plessy versus Ferguson fame the victim of persecution or discrimination? Well, that issue is not before this court today. I know, but I'm asking the question. But if you were to ask my personal opinion, I think it would be that it probably falls under discrimination because the question is what sort of educational access does the individual have? The fact is that in this particular case, Mr. Macek was not so denied or so deprived of a way of living or a way of being able to support himself that there was just no way for him to survive in Guatemala. The record indicates that he had a job, his family had a job, that he was able to support himself while he was in Guatemala. It's just that he was not able to go obtain the particular job that he wanted or was able to get the particular education that he sought, which, again, this court has previously found alone does not constitute persecution, but rather mere discrimination. The country report seems to validate his claim that he was the victim of persecution. By 1999, by the new constitution, things may have changed, but the country report suggests that back then he was denied all the things that he says he was denied. He couldn't go see doctors. He couldn't get schooling. He was treated badly in the courts because he couldn't speak the language because he was a member of this group. So if you read the country report that way, it seems to say that they were not only discriminated against but persecuted back then, the indigenous groups. Is that wrong? The government would contend that, again, the lack of access to basic services, which the indigenous people perhaps were denied, again, does not rise to the level of persecution, but the information that is contained in the country report, the government would contend, goes more toward this issue of wealth outnumbered fear, whether Mr. Matrick, if he were to return to Guatemala on this date, would he face persecution? And, again, the information in the Department of State report is full of changes that have occurred since the 1996 peace accord. It cites numerous indigenous persons who have obtained positions within the current administration. One of them has been appointed ambassador to Norway. There have been several actions that have been taken by the government in order to bring people of the indigenous background into the mainstream culture. And recognizing this, and this is all according to the information in the country report, that recognizing the lack of access to the legal system, they've attempted to hire translators who are able to speak the four most populist indigenous languages. They've really taken action in order to bring the indigenous people into the mainstream culture. So to put it in legal terms, you're saying that even if we were to conclude that he was a victim of past persecution and entitled to a presumption of future persecution, that's dispelled by the country reports that show completely changed conditions? Correct, Your Honor. Although the government would strongly contend that there has been no showing of past persecution in this particular petitioner's case. Do you have anything else? No, Your Honor. Just to add that, again, under the substantial evidence test, what is needed is enough evidence submitted by the petitioner that it compels a rational fact finder to decide other than what has been concluded in this case. And again, Mr. Maciek has been unable to demonstrate that the incidents he experienced while he was in Guatemala rises beyond discrimination to persecution. Or that, in fact, his experience with the guerrillas may have been based on any of the protected grounds that is necessary under the act. And again, as we have just discussed, Your Honors, the information in the record currently supports that there should be no fear of harm or persecution for Mr. Maciek to return to Guatemala today. Thank you, Counsel. Thank you, Your Honor. We'll let you respond. Well, take your time. It's an important issue. Don't feel pushed. I mentioned he entered the United States in 1990. That was incorrect. He entered in 1992. But that was still at a very tender age of 16 if he's born in 76. And again, if all was well in Guatemala, why would he take such a dramatic step? Well, there are a lot of answers, but... All is better here. Yes, but we think it's economically... Counsel, you have to have more than a rhetorical question to satisfy the burden that you carry in the appellate courts. Yes, Your Honor. I would argue that if one were coming to the United States simply for better economic opportunities, they wouldn't do so at such a tender age. And I think the fact he came at this age supports his contention that he was the victim of persecution. What's your answer to the idea that even if we start from the proposition that he was the victim of persecution when he left the country, that that notwithstanding, and even though he might be entitled to the presumption, it's dispelled completely by the country reports that show definitively, at least as far as we're sitting here and reading this, that he doesn't have a well-founded fear of persecution in the future because of all the changes that you're well aware of. Then I would argue case law has shown that even in the absence of future persecution, one is eligible for asylum based on past persecution alone, if the past persecution is severe enough. And I would argue that what he underwent as a boy and as a teenager, those circumstances in that context would be severe enough to warrant a grant of asylum, even in the absence of a showing of a well-founded fear of future persecution. Do you have any answer to my extra record question about Homer Plessy? Was he the victim of persecution or discrimination? Persecution. Why? Because the treatment he. That's better for your case. The treatment he endured was constituted suffering. Persecution has been defined by this court, the Ninth Circuit, as the infliction of suffering. And the treatment he underwent, I would argue, constituted, I would argue he was subject to suffering. So that would constitute persecution. Do you have anything else? No, Your Honor. Thank you both. The case was argued as ordered and submitted.
judges: Hall, Trott, Callahan